**STATE of Tennessee, Appellee,**

v.

**Jack Randall SHULTS, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Oct. 26, 1984.

Permission to Appeal Denied by Supreme Court Jan. 14, 1985.

William M. Leech, Jr., Atty. Gen., Kimberly J. Dean, Asst. Atty. Gen., Nashville, Al Schmutzer, Jr., Dist. Atty. Gen., Sevierville, for appellee.

Gordon Ball, Ball & Dunn, Newport, for appellant.

OPINION

CORNELIUS, Judge.

Jack Shults, indicted in Sevier County, pled guilty to grand larceny and possession of burglary tools. He received concurrent sentences of six and five years respectively with a release eligibility date of thirty percent.

He presents four issues on appeal: no probable cause for his seizure and arrest, failure of the officers to administer the *Miranda* warning, improper lineup of motor vehicle and, his right after this appeal to petition the trial court to probate his sentence.

In view of the issues raised it is necessary to consider the formal plea agreement. The agreement contains the following:

The defendant agrees to plead guilty to grand larceny and carrying burglar tools and the State agrees to recommend to the Court the following sentence: Grand larceny—6 years, Range I, 30%; carrying burglar tools—5 years, Range I, 30%. Sentences to run concurrently, defendant remain on bond pending appeals of *search and seizure issues*—no probation.

The above terms represent the full agreement between the parties.

Signed this the 27th day of July, 1983.

STATE OF TENNESSEE
/S/ Al Schmutzer, Jr.
DISTRICT ATTORNEY GENERAL

I agree to this freely and voluntarily. I understand that if this agreement is not accepted by the Court I can withdraw my guilty plea.

/S/ Jack Shults
DEFENDANT
/S/ Gordon Ball
DEFENDANT'S ATTORNEY

The trial court accepted the plea agreement and pronounced judgment accordingly. The acceptance order provided "With the consent of the District Attorney General and the court the defendant retains his right to appeal legal issues."

■ Appellant claims in his brief that he was "allowed" to appeal all legal issues. This assertion is broader than the plea agreement and judgment of the trial court. Such a claim exceeds the legal bounds of Rule 37(b)(2)(i), T.R.Cr.P., or Rule 3(b) T.R. A.P., which are the authority for a defendant, "upon a guilty plea agreement, to *explicitly* reserve, with the consent of the State and the trial court, the right to appeal a certified question of law *dispositive* of the action." The only issue reserved in the plea agreement was one of "search and seizure."

None of the four issues in appellant's brief "explicitly" address the customary search and seizure issue. As a matter of fact, none of the issues present a controlling question of law solely dispositive of the action. However, the procedural rules may arguably be stretched to cover the first issue of seizure without probable cause and save it from the rule that a plea of guilty constitutes a waiver of non-jurisdictional defenses. *State ex rel Lawrence v. Henderson,* 1 Tenn.Cr.App. 199, 433 S.W.2d 96, 101 (1968); also see *Beaty v. Neil,* 4 Tenn.Cr.App. 86, 467 S.W.2d 844, 847 (1971). We will consider the first issue.

■ To resolve the seizure issue we will review the proof presented by the State during the suppression hearing. The suppression hearing was apparently conducted on the day the case was set for trial and after a portion of the jury had been selected. The plea agreement appears to have resulted from the trial court overruling the defense motions.

Teddy Agee, a patrolman for the Sevierville Police Department, testified that he investigated the theft of a new truck from McNeely-Whaley Motors on January 25, 1983. He interviewed Randy Fox, Tim Hurst and Randy Justice. These men had shortly before noticed the truck in question and a white over bronze, or brown, early model 1970 or 1971 Oldsmobile Cutlass convertible away from the motor company. Fox had been interested in purchasing the truck so upon seeing it away from the motor company, they approached it. They observed two men pouring gasoline into the truck's gas tank. Upon their approach, the two men each entered a separate vehicle and left. Mr. Fox followed the Oldsmobile and described the driver as having dark hair and a beard. Officer Agee could not recall if Fox had described his clothing. Agee's partner relayed the information to the Sheriff's Department with specific instructions for broadcasting on Cocke and Jefferson Counties' radio frequency.

Officer George Davis, of the White Pine Police Department, testified that he and auxiliary Officer Mike Marie received the driver's description as a bearded subject wearing a green jacket. While stationed at

the intersection of Metzer Highway and Highway 113, they observed the described automobile and driver make a right turn onto the Airport Road. Officer Davis testified the defendant was the driver.

When the officers drove across the highway and activated their blue light, the defendant's automobile accelerated. A chase in excess of 80 miles per hour ensued and was joined by Officer Dean Smith. The officers were unable to detect a license plate on the chased vehicle. For a brief period, within Cocke County, the chased vehicle eluded its pursuers, but was found unattended behind a church. It bore no license plate.

Approximately a quarter of a mile from where the car had been abandoned, Officers Davis and Marie came upon the defendant walking on the side of the road in the direction of White Pine. Not recognizing him at first, they offered him a ride. As he entered the police vehicle, he was recognized as the driver of the chased automobile. These officers denied questioning defendant as to the theft. They radioed Sheriff Eslinger and Dean Smith to meet them at Walter's Bridge where the defendant was placed in their custody.

The record clearly demonstrates that the initial intrusion upon the liberty of Shults was the crossing of the highway and activating the blue light. This action was based upon objective facts developed by another officer and relayed by the reliable means of the police radio. There was a logical request for assistance. The relayed facts were strengthened by the high speed vehicular chase. Officer Davis' statement, during recall for additional cross-examination, that he acted on a "hunch" is belied by his prior testimony. Officers Agee and Davis were able to point to specific and articulable facts which, when taken together with rational inferences from those facts, reasonably warranted the intrusion upon Shults' liberty. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). In the first instance, Davis and Marie were justified in turning on their blue light to make an investigatory stop.

When the defendant failed to stop they had an added reasonable suspicion to further their investigatory efforts. After the chase and upon recognizing the defendant, they had probable cause to detain him for further investigation. There is no merit to appellant's certified issue of seizure without probable cause.

Although we hold to the proposition that issues two, three and four as presented in appellant's brief were waived by his guilty plea, we have fully considered the record of the suppression hearing. The trial court ruled adverse to defendant on issues two and three. The record contains sufficient evidence to support the trial court's rulings. The finding of such facts by the trial court would be conclusive in this court had the appellant appealed of right from a guilty verdict following a not guilty plea. See *State v. Tate*, 615 S.W.2d 161, 162 (Tenn.Cr.App.1981). The issue of no probation was clearly resolved by the plea agreement.

The judgment of the trial court is affirmed.

DWYER and DUNCAN, JJ., concur.